1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

VOLVO CONSTRUCTION
EQUIPMENT NORTH AMERICA,
LLC,

                    Plaintiff,

            v.

CLYDE/WEST, INC,

                    Defendant.

CASE NO. C14-0534JLR

ORDER DENYING MOTION TO
DISMISS OR STAY

16

## I.   INTRODUCTION

17   Before the court is Defendant and Counterclaim-Plaintiff Clyde/West, Inc.'s

18   ("Clyde/West") motion to dismiss or stay Claim 1 of Plaintiff Volvo Construction

19   Equipment North America, LLC's ("Volvo") Complaint.  (Mot. (Dkt. # 24).)

20   Clyde/West asks the court to dismiss or stay one of the four claims in Volvo's Complaint

21   under the *Brillhart* abstention doctrine.  That doctrine gives the court broad discretion to

22   stay or dismiss declaratory judgment actions, such as this one, where doing so would

advance concerns of judicial economy and federalism.  *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942); *Wilton v. Seven Falls Company*, 515 U.S. 277, 287 (1995).  Under the *Brillhart* doctrine, the court examines numerous factors to determine if abstention is appropriate.  *See, e.g.*, *First Mercury Ins. Co. v. SQI, Inc.*, No. 13-2110JLR, 2014 WL 1338657 (W.D. Wash. April 3, 2014).  Here, the court has examined the entire spectrum of factors and, weighing those factors, concludes that *Brillhart* abstention is not warranted.  Accordingly, Clyde/West's motion to dismiss or stay is DENIED.

## II.    BACKGROUND

This case involves the termination of a dealership agreement between Volvo and Clyde/West.  (*See* Compl.)  Volvo is a designer and manufacturer of heavy construction equipment.  (*Id.* ¶ 7.)  Clyde/West has been a dealer of Volvo's equipment since 2002, and operates in Washington, Oregon, and Idaho.  (*Id.* ¶ 8.)  Between 2010 and 2012, Volvo allegedly became dissatisfied with Clyde/West's performance as a Volvo dealer. (*Id.* ¶ 14.)  On March 5, 2012, Volvo sent a letter to Clyde/West terminating the dealership agreement between the parties in Washington.  (*Id.*)  Under the parties' agreement, either party could terminate the relationship without good cause if they provided 180 days notice, which Volvo did.  (*Id.*)

In response, Clyde/West sued Volvo in federal court in November, 2012. Clyde/West brought an action in this court in front of the Honorable John C. Coughenour asserting that Volvo's termination of the dealership agreement violated numerous state and federal laws, namely the Washington Manufacturers' and Dealers' Franchise

1    Agreements Act, RCW Chapter 46.96 ("WMDFAA"), the Washington Franchise

2    Investment Protection Act, RCW Chapter 19.100 ("WFIPA"), the Federal Dealer Suits

3    Against Manufacturers Act, 15 U.S.C. § 1221, et seq. ("FDSAMA"), and the implied

4    covenant of good faith and fair dealing in the parties' agreement.  (Compl. ¶ 16.)

5         In addition, and at the same time, Clyde/West sued Volvo in a state administrative

6    tribunal.  (*Id.* ¶ 17.)  Clyde/West commenced administrative proceedings in the Office of

7    Administrative Hearings ("OAH") for the Department of Licensing asserting that Volvo

8    violated the WMDFAA by terminating the parties' dealership agreement without good

9    cause.  (*Id.*)  Initially, this claim duplicated Volvo's WMDFAA claim in the federal court

10    action.  (*See id.*)  However, on October 19, 2013, Clyde/West amended its complaint in

11    the federal court action to remove the WMDFAA claim, electing to pursue that claim in

12    the state administrative proceeding instead.  (*Id.* ¶ 18.)

13         Eventually, the parties reached a tentative settlement of their claims.  On October

14    29, 2013, they entered into a Letter of Intent ("LOI"), under which they agreed to a

15    framework for settling the claims at issue both in federal court and in front of OAH.  (*Id.*

16    ¶ 20.)  The agreement set forth methodology for making settlement payments and

17    dismissing Clyde/West's pending claims against Volvo.  (*Id.*)  In early November, 2013,

18    both actions were dismissed without prejudice pursuant to the LOI.  (*Id.* ¶¶ 21-22.)

19         However, the settlement ultimately fell through.  (*Id.* ¶ 23.)  On April 10, 2014,

20    Volvo terminated the LOI.  (*Id.* ¶ 24.)  On the same day, Volvo filed this declaratory

21    judgment action in federal court.  (*See* Compl.)  The action mirrored Clyde/West's

22    original action in front of Judge Coughenour, but in reverse.  (*See id.*)  Specifically, it

1  requested declaratory judgment that Volvo's termination of the parties' dealership

2  agreement did not violate the WMDFAA, WFIPA, FDSAMA, or implied covenant of

3  good faith and fair dealing.  (*Id.* ¶¶ 25-51.)

4        Just over a month later, Clyde/West renewed its state administrative proceeding.

5  Clyde/West filed a petition with OAH seeking a "'determination as to the existence of

6  good cause and good faith for the termination" of its Washington Volvo dealership under

7  RCW § 46.96.040." (Leitner Decl. (Dkt. # 25) ¶ 8.)  This petition relates to only one of

8  the supposedly applicable statutes—the WMDFAA.  (*See id.*)  The next day, Clyde/West

9  filed this motion to dismiss the WMDFAA portion of Volvo's declaratory judgment

10  action, namely Claim 1, arguing that it should be dismissed or stayed under the doctrine

11  of *Brillhart* abstention.  (*See* Mot.)

12                     **III.   ANALYSIS**

13  **A.   Abstention Generally**

14        The federal abstention doctrines are an exception to the general rule that, "[a]bsent

15  significant countervailing interests, the federal courts are obligated to exercise their

16  jurisdiction." *Walnut Props., Inc. v. City of Whittier*, 861 F.2d 1102, 1106 (9th Cir. 1988)

17  (quoting *World Famous Drinking Emporium v. City of Tempe*, 820 F.2d 1079, 1082 (9th

18  Cir. 1987)).  Indeed, in the ordinary course of litigation, the mere existence of parallel

19  state court proceedings does not excuse a federal court from exercising its subject matter

20  jurisdiction. *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817-18

21  (1976).  Instead, "the pendency of an action in state court is no bar to proceedings

22  concerning the same matter" in a federal court. *Id.*  However, there are numerous

1    instances in which the existence of a parallel state court proceeding does justify a court in

2    declining to exercise its subject matter jurisdiction. *See id.* at 813-17. These instances

3    are embodied in the abstention doctrines. *See id.*

4    **B.**    ***Brillhart* Abstention**

5        This case involves *Brillhart* abstention. Under the *Brillhart* doctrine, district

6    courts have broad discretion to stay or dismiss actions seeking declaratory judgment, as

7    recognized in *Brillhart*, 316 U.S. at 494-95, and *Wilton*, 515 U.S. at 287. *See also* 28

8    U.S.C. § 2201 (federal courts "*may* declare the rights and other legal relations of any

9    interested party seeking such declaration" (emphasis added)). The *Brillhart* doctrine rests

10   on concerns about judicial economy and cooperative federalism. *Brillhart*, 316 U.S. at

11   495. In light of these concerns, district courts consider three primary factors when

12   evaluating whether to abstain from hearing a case under the *Brillhart* doctrine: "[1]

13   avoiding 'needless determination of state law issues'; [2] discouraging 'forum shopping';

14   and [3] avoiding 'duplicative litigation.'" *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656

15   F.3d 966, 975 (9th Cir. 2011) (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220,

16   1224 (9th Cir. 1998)). The court considers each of these factors in turn.

17        1.   Needlessly Determining State Law Issues

18        First, courts decline jurisdiction under the Declaratory Judgment Act in order to

19   avoid needlessly determining state law issues. *Id.* District courts appropriately avoid

20   determining state law when: state and federal cases raise the same "precise state law

21   issues," state law provides the rule of decision, and the federal case involves an area of

22   law expressly left to the states. *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371

1   (9th Cir. 1991).  This factor counsels against exercising jurisdiction when "no compelling

2   federal interests are at stake."  *Transamerica Occidental Life Ins. Co.v. Digregorio*, 811

3   F.2d 1249, 1255 (9th Cir. 1987); *see also Robsac*, 947 F.2d at 1371.

4          This factor does not support *Brillhart* abstention in this case.  This is so in part

5   because the issues involved in this case are not the "precise state law issues" involved in

6   the state administrative proceeding.  *See Robsac*, 947 F.2d at 1371.  This case involves

7   many different and additional issues and claims.  If the court were to hyper-focus on

8   Claim 1, as Clyde/West urges, it is true that there is a substantial amount of issue overlap

9   between the state administrative proceeding and this case.  Indeed, the core issue

10   presented in both proceedings—at least with respect to Claim 1—is "good cause."  (*See*

11   Compl. ¶¶ 25-28; Leitner Decl. ¶ 8.)  But that does not change the fact that there are

12   numerous other factual and legal issues in this case that overlap with the state

13   administrative proceeding but would not be addressed in that proceeding.  (*See generally*

14   Compl.)  Moreover, while state law does provide the rule of decision with respect to

15   Claim 1, this is not an area that has been "expressly left to the states."  *See Robsac*, 947

16   F.2d at 1371.  Clyde/West argues that this area of law has been "expressly left to the

17   states" simply because Congress has not preempted the field of dealership law.  (*See* Mot.

18   at 8.)  This is unpersuasive.  The fact remains that Congress has acted in this field,

19   passing the FDSAMA.  *See* 15 U.S.C. § 1221, et seq.  It is difficult to say that there are

20   "no compelling federal interests" at stake where Congress has passed legislation on the

21   very topic of litigation.  *See Digregorio*, 811 F.2d at 1255.  This is not like, for example,

22   the *First Mercury* case, where Congress had expressly declared that states should regulate

1   the field of insurance law, *see* 15 U.S.C. § 1011, and jurisdiction was based solely on

2   diversity of citizenship.  2014 WL 1338657, at *6-7.  Here, this factor does not support

3   abstention.

4       2.  Forum Shopping

5       Second, courts decline jurisdiction over actions for declaratory relief to discourage

6   forum shopping.  *R.R. St. & Co.*, 656 F.3d at 975.  Congress did not intend to expand

7   federal jurisdiction by enacting the Declaratory Judgment Act, and a plaintiff may not use

8   this statute to bring a claim more properly raised in a pending state action.  *Int'l Ass'n of*

9   *Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995).  For this reason,

10  federal courts refuse to entertain reactive declaratory actions filed solely to gain a tactical

11  advantage.  *Id.* ("[T]he Declaratory Judgment Act is not to be used either for tactical

12  advantage by litigants or to open a new portal of entry to federal court for suits that are

13  essentially defensive or reactive to state actions."); *R.R. St. & Co.*, 656 F.3d at 976

14  (quoting *Robsac*, 947 F.2d at 1371).  The forum shopping analysis focuses on whether

15  the federal case is "reactive," but does not depend solely on timing of filing.  *See Moses*

16  *H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 17 n.20 (1983) (noting that

17  "despite chronological priority of filing," a suit may still be "a contrived, defensive

18  reaction" to a suit in another forum).

19      Courts examine the "sequence of events" leading to a federal action to determine

20  if a party engaged in forum shopping.  *See Int'l Ass'n of Entrepreneurs of Am.*, 58 F.3d at

21  1270.  For example, the Ninth Circuit in *Robsac* found that the plaintiff engaged in forum

22  shopping by filing a federal action in response to pending non-removable state court

1  proceedings.  *Robsac*, 947 F.2d at 1371.  Similarly, in *International Association of*

2  *Entrepreneurs*, the plaintiff attempted to remove the state case to federal court, but filed

3  an untimely petition.  *Int'l Ass'n of Entrepreneurs of Am.*, 58 F.3d at 1268.  Only after the

4  court denied its removal petition did plaintiff file suit in federal court, and the Eighth

5  Circuit affirmed the district court's decision to decline jurisdiction under these

6  circumstances.  *Id.* at 1270.  The district court properly did not allow plaintiff "to

7  circumvent the removal statute's deadline by using the Declaratory Judgment Act as a

8  convenient and temporally unlimited back door into federal court."  *Id.*

9      Here, each side argues that the other is forum shopping.  Clyde/West accuses

10  Volvo of forum shopping and of trying to "dictate the contents of the lawsuit even though

11  it has no claims of its own."  (Mot. at 9.)  Clyde/West argues that it, not Volvo, is the

12  "natural or true plaintiff," and that the timing of the lawsuit suggests forum shopping,

13  particularly the fact that Volvo filed this lawsuit on the same day it terminated the LOI.

14  (*Id.*)  Clyde/West asserts that Volvo "rigged the race so it could file first."  (*Id.*)

15  Meanwhile, Volvo accuses Clyde/West of forum shopping for its WMDFAA claim.

16  (Resp. at 12-14.)  Volvo points out that Clyde/West originally brought its WMDFAA

17  claim in federal court but then amended its complaint to remove the claim and filed it

18  with OAH.  (*Id.* at 12-13.)  Volvo points out that this happened after the WMDFAA

19  claim had been in federal court for a year and only after Clyde/West obtained new

20  counsel.  (*Id.*)  Volvo argues that its only desire is to have the entire dispute resolved in a

21  single forum, and that Clyde/West has complicated matters by seeking a secondary forum

22  for the WMDFAA claim.  (*Id.* at 13.)

ORDER- 8

1    This factor does not support abstention.  This is because the sequence of events

2    surrounding the various lawsuits does not lead to a finding of forum shopping by Volvo.

3    Indeed, neither side has demonstrated to the court's satisfaction that there is necessarily

4    forum shopping underway.  Specifically, neither side offers the court any compelling

5    description of what "tactical advantage" the other side might gain by favoring one forum

6    over another, *see Angoff*, 58 F.3d at 1270, let alone, as Clyde/West contends, that Volvo

7    is engaged "nothing less than a frontal attack on the concept of federalism and an effort to

8    undermine the objectives of the Washington Legislature . . ." (Reply (Dkt. # 30) at 13).

9    The sequence of events here suggests tactical jockeying of some form or another, but

10   does not suggest one-sided forum shopping of the kind that would pose any kind of threat

11   to cooperative federalism.  *See R.R. St. & Co.*, 656 F.3d at 976.  This case is not like

12   *Robsac* or *International Association of Entrepreneurs*, where there is a set of facts that

13   plainly points to forum shopping in an effort to gain an obvious tactical advantage.  *See*

14   *Robsac*, 947 F.2d at 1371; *Int'l Ass'n of Entrepreneurs of Am.*, 58 F.3d at 1268.  The

15   record here is much more equivocal.  Likewise, this factor is equivocal and does not

16   support *Brillhart* abstention.

17       3.  Duplicative Litigation

18       Third, courts decline jurisdiction over actions for declaratory relief in order to

19   avoid duplicative litigation.  *R.R. St. & Co.*, 656 F.3d at 975.  The Ninth Circuit described

20   an example in *Railroad Street*, where it said duplicative litigation would result if

21   retaining jurisdiction "required the district court to address the same issues of state law

22

1  and policy interpretation that the state court had been grappling with for several years."

2  *Id.* at 976.

3        This factor, perhaps more than any other, counsels against *Brillhart* abstention.

4  This factor is grounded in concerns for judicial economy and operates to prevent

5  "independent" and "unnecessary" duplications of effort by state and federal courts.

6  *Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998).

7  These concerns are not in play where the district court must proceed with the lawsuit

8  regardless of whether it chooses to abstain from hearing a portion of the case.  *See id.*

9  This is because, in that situation, abstention would not save any effort or otherwise

10  promote judicial economy.  *Id.*  Rather, it would create piecemeal litigation and extra

11  effort for all parties and courts.  *Id.*  Here, Clyde/West asks the court to sever a single

12  claim from this case that will be heard in front of OAH, but to proceed with not only the

13  remainder of the declaratory action, but also Clyde/West's counterclaims on the same

14  subject matter.  (*See* Mot.)  This would not save the court time or resources:  the court

15  will be adjudicating the factual and legal issues at the core of this dispute regardless of

16  how it decides this motion.  Nor would it save time or resources for the parties:  they will

17  be litigating their claims in this forum either way.  Instead, abstaining on a single claim

18  would unnecessarily chop this case into pieces.  Thus, this factor counsels against

19  *Brillhart* abstention.  *See, e.g.*, *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-68

20  (9th Cir. 1991) (finding *Brillhart* abstention inappropriate because "whether the district

21  court decided the entire controversy, or refrained from deciding part of it, major issues of

22  state law necessarily had to be decided in federal court").

1

    4.  <u>Other Factors</u>

2

    In addition to the three primary factors described above, courts in the Ninth Circuit

3

consider secondary factors as well.  These factors include:

4

5

6

7

    [1] whether the declaratory action will settle all aspects of the controversy;
    [2] whether the declaratory action will serve a useful purpose in clarifying
    the legal relations at issue; [3] whether the declaratory action is being
    sought merely for the purpose of procedural fencing or to obtain a 'res
    judicata' advantage; or [4] whether the use of a declaratory action will
    result in entanglement between the federal and state court systems.   In
    addition, the district court might also consider [5] the convenience of the
    parties; and [6] the availability and relative convenience of other remedies.

8

*Dizol*, 133 F.3d at 1225 n.5.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

    Here, none of these factors substantially tip the scales in favor of abstention.  With

respect to factor [1], this declaratory action will settle all aspects of the controversy

between Volvo and Clyde/West because it comprises every facet of that controversy.

(*See* Compl.)  On the other hand, abstention would limit the scope of this action and leave

part of it unresolved.  Thus, factor [1] counsels against abstention.  Factors [2] and [3] are

neutral—there is no particular advantage to having the "good cause" issue decided in

federal court instead of in a state administrative proceeding, and Clyde/West has not

demonstrated that Volvo is seeking a res judicata advantage as opposed to simply seeking

to resolve all issues in a single forum.  With respect to factor [4], there is certainly a risk

of state/federal entanglement if the court does not abstain from deciding Claim 1.

However, abstention would do little to mitigate that risk—the court would still be called

upon to decide numerous factual and legal issues in this proceeding that would cause

entanglement with the state administrative proceeding.  As such, this factor supports

1    abstention, although not overwhelmingly.  The last two factors are also largely neutral—

2    it appears that the parties will be litigating in two forums regardless of the outcome of

3    this motion, and the availability and convenience of other remedies is not a major

4    consideration here.  In sum, the secondary factors do not trump the court's analysis of the

5    three primary factors.

6           Having weighed all factors set forth by the Ninth Circuit, the court concludes that

7    *Brillhart* abstention is not a wise course of action and would not promote cooperative

8    federalism or judicial economy.  Accordingly, the court will not dismiss or stay Claim 1.

9                              **IV.    CONCLUSION**

10          For the reasons stated above, Clyde/West's motion to dismiss or stay (Dkt. # 24) is

11   DENIED.

12          Dated this 18th day of June, 2014.

13

14

15   _____
     JAMES L. ROBART
16   United States District Judge

17

18

19

20

21

22

ORDER- 12