THE HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**
9          **WESTERN DISTRICT OF WASHINGTON**

10

11    **VOLVO CONSTRUCTION EQUIPMENT**                CASE NO. 14-cv-00534-JLR
      **NORTH AMERICA, LLC,** a Delaware
12    Limited Liability Company,
                                                      **PLAINTIFF'S MOTION FOR**
13                    Plaintiff,                      **SUMMARY JUDGMENT**
      vs.
14                                                    **NOTE ON MOTION CALENDAR:**
      **CLYDE/WEST, INC.,** an Oregon                 **FRIDAY, OCTOBER 10, 2014**
15    Corporation,

16                    Defendant.

17

18

19

20

21

22

23

24    **Plaintiff's Motion For Summary Judgment**                    Thomas M. Pyper
25    Case No. 14-cv-00534-JLR                                        Ann M. Maher
                                                                      Cynthia L. Buchko
26                                                        Whyte Hirschboeck Dudek S.C.
                                                           33 E. Main Street, Suite 300
27                                                                    P.O. Box 1379
                                                               Madison, WI 53701-1379
                                                                      (608) 255-4440

THE HONORABLE JAMES L. ROBART

Pursuant to Rule 56, Fed.R.Civ.P., Plaintiff and Counterclaim Defendant Volvo Construction Equipment North America, LLC ("Volvo"), hereby moves this Court for an Order granting summary judgment against Defendant, Clyde/West, Inc. ("CW"), declaring that Volvo had the right to terminate CW as a Volvo dealer under Volvo's Washington Dealer Agreement with CW (the "Agreement") without violating the Washington Manufacturers' and Dealer's Franchise Agreements Act (RCW 46.96 *et seq.*) ("WMDFAA"), Washington Franchise Investment Protection Act (RCW 19.100 *et seq.*) ("WFIPA"), Federal Dealer Suits Against Manufacturers Act (15 U.S.C. § 1221 *et seq.*) ("FDSAMA"), and without breaching an implied covenant of good faith and fair dealing in the Agreement; and dismissing CW's counterclaims with prejudice.  There are no genuine issues of material fact in dispute, and Volvo is entitled to judgment as a matter of law.  Pursuant to LCR 7(b)(1), the arguments in support of this motion follow.

## INTRODUCTION

This case involves termination of the Washington Agreement between Volvo and CW concerning heavy construction equipment.  The Agreement contains a provision allowing ***either*** party to terminate the Agreement for any reason with 180 days' notice.  CW seeks to thwart Volvo's contractual right to terminate the Agreement *without* good cause by invoking the WMDFAA, WFIPA, and FDSAMA, which protect "motor vehicle dealers," "franchises," or "automobile dealers," respectively, from non-causal termination.  As a matter of law, however, the WMDFAA and FDSAMA are inapplicable because heavy construction equipment dealerships are not covered and CW cannot satisfy the "public interest" element of the WFIPA.

CW also claims that termination of the Agreement is a breach of Washington's implied covenant of the duty of good faith and fair dealing.  However, under Washington law, the duty of

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

1

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

good faith and fair dealing only attaches to contractual obligations, not unequivocal contractual rights, such as the right to terminate upon 180 days' notice.  CW cannot eliminate Volvo's contractual right to terminate the Agreement without cause upon 180 days written notice under the guise of good faith and fair dealing.

## FACTUAL BACKGROUND

In 2002, Volvo first appointed CW as a Volvo dealer for the purchase and resale of Volvo heavy construction equipment under three separate dealership agreements for the States of Washington, Oregon and Idaho.[1]  (Doc. 1, ¶ 8; Doc. 23, Answer ¶ 8; (Declaration of Andrew Gibson ("Gibson Decl."), ¶ 2.)  Between 2002 and 2010, Volvo became dissatisfied with CW's performance as a Volvo dealer, and a dispute arose between Volvo and CW as to whether CW would continue as a Volvo dealer.  (*Id*.)  On March 12, 2010, Volvo and CW resolved their dispute and reached an agreement whereby CW would continue as Volvo's heavy construction equipment dealer in Oregon, Washington and Idaho.  (Doc. 1, Compl. ¶ 12; Doc. 23, Answer ¶ 12; Gibson Decl., ¶ 3.)  That same day, Volvo entered into the Agreement for the State of Washington ("Agreement") that is the subject of this litigation.[2]  (Doc. 1, Compl. ¶ 11; Doc. 23, Answer ¶ 11; Gibson Decl., ¶ 3.)

Pursuant to the Agreement, Volvo appointed CW "as its exclusive authorized dealer of Volvo Products" within the state of Washington.  (Gibson Decl., ¶ 4 and Exh. 1, p. 2.)  The "Volvo Products" include "Volvo Machines, Volvo Parts, and Volvo Sales Products."  (*Id.* at ¶ 5

---

[1] Volvo has not terminated the Oregon and Idaho Dealer Agreements.  (Doc. 1., ¶ 8.)

[2] Volvo and CW also entered into a Comprehensive Settlement Agreement and Full and Final Release of Claims ("Release of Claims") in which CW provided Volvo with a full and unconditional release of all claims, whether known or unknown, prior to March 12, 2010.  (Doc. 1, Compl., ¶ 12; Doc. 23, Answer, ¶ 12; Gibson Decl., ¶ 3.)

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

2

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

1   and Exh. 1, p. 17.)  "Volvo Machines" is defined under the Agreement to include, "New, unused

2   construction equipment as designated by Volvo from time to time …." (*Id.*)  The "Volvo

3   Machines" sold pursuant to the Agreement are heavy construction equipment designed for off-

4   road use for construction projects.  (Gibson Decl., ¶ 6.)  Volvo's heavy construction equipment are

5   not compliant with federal highway safety and lighting standards,  and they are not required to be

6   titled, registered or licensed under Washington law for travel on Washington highways.  (*Id.* at ¶¶

7   7-8; Declaration of James Loosen ("Loosen Decl."), ¶ 3 and Ex. 4, p. 2.) The Volvo construction

8   equipment are considered "Special Highway Construction Equipment" by the State of Washington

9   Department of Licensing ("DOL").  (Loosen Decl., ¶ 3 and Ex. 4, p. 2.)

10      Two years ago, Volvo sent a letter to CW terminating the Agreement, pursuant to ¶ 7.1

11   thereof, which provides that *either party* may terminate the Agreement *without* good cause upon

12   180 days-notice.  (Gibson Decl., ¶ 10 and Exh. 2.)  Volvo provided CW the required 180 days

13   prior written notice before the termination would be effective. (*Id.*)  For two years, the parties

14   attempted to resolve the dispute.  (Complaint, ¶¶ 14-23.)

15      On April 10, 2014, Volvo filed this action, seeking declaratory judgment on four claims.

16   (Doc. 1, Compl.)  Volvo has allowed, and will continue to allow, CW to operate as a Volvo dealer

17   despite the termination of the Agreement until this Court rules on whether Volvo's termination

18   was legally permissible.  (Gibson Decl., ¶ 11.)  On May 14, 2014, CW filed its Answer,

19   Affirmative Defenses and three Counterclaims, which mirrored Volvo's claims II, III, and IV.

20   (Doc. 23, Counterclaims ¶¶37-51.)  CW did not bring a claim under the WMDFAA; however, it

21   brought a non-statutory claim for breach of good faith and fair dealing.[3]  (*Id.*)

22

---

23      [3] Additional facts are set forth in the Argument section, *infra*.

24   **Plaintiff's Motion For Summary Judgment**
     Case No. 14-cv-00534-JLR

25

26                                          3

27

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P.; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249. Although, as a general matter, courts must draw reasonable inferences supported by the evidence in favor of the non-moving party, "[f]or purely legal questions, summary judgment is appropriate without deference to the non-moving party." *Seaman v. State Farm Fire & Cas. Co.,* C06-1495JLR, 2007 WL 1875903, *1 (W.D. Wash. June 28, 2007) (Robart, J.). Whether a statute applies to a factual situation is a question of law. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wash. 2d 133, 150, 930 P.2d 288, 297 (1997).

## ARGUMENT

## I.   THE WMDFAA DOES NOT APPLY TO THE AGREEMENT.

The WMDFAA establishes "a statutory framework that governs new ***automotive dealer*** terminations" under which "a manufacturer may terminate a dealership only if it follows the statutory scheme set out within RCW 46.96." *Cont'l Cars, Inc. v. Mazda Motor of Am., Inc.*, No. C11-5266BHS, 2011 WL 2604777, at *3 (W.D. Wash. June 30, 2011) (emphasis added). As a matter of law, the WMDFAA is inapplicable, and was never intended by the Washington legislature to apply to heavy construction equipment dealerships. CW cannot use the WMDFAA to avoid termination under ¶ 7.1 of the Agreement.

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

4

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

### A.     Under The WMDFAA's Plain Statutory Language, CW Is Not Entitled to Protections Afforded Under the Act.

"The purpose of statutory interpretation is 'to determine and give effect to the intent of the legislature.'" *State v. Evans*, 177 Wash. 2d 186, 192, 298 P.3d 724 (2013) (internal citation omitted).  Courts "derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *Id.*  Looking at the statutory scheme as a whole, it is plain that the WMDFAA does not apply to the Agreement because CW is not a "new motor vehicle dealer," and CW is expressly excluded from the WMDFAA as a "miscellaneous vehicle dealer."

### 1.     CW Is Not A "New Motor Vehicle Dealer."

The Act's "Legislative findings" provide that the Act "regulate[s] the relationship between motor vehicle dealers and motor vehicle manufacturers" and provides that dealers of "automobiles" are the intended target of the Act's protections.  RCW 46.96.010.  The Washington legislature found that "there is a substantial disparity in bargaining power between *automobile* manufacturers and their dealers" and found regulation necessary for "the continued availability and servicing of *automobiles* sold to the public."  RCW 46.96.010 (emphases added).  These legislative findings provide context  for the statutory scheme as a whole, and must be considered in determining whether the Agreement falls within the WMDFAA.  *Evans*, 177 Wash. 2d at 192.

RCW 46.96.020 sets forth definitions applicable to the WMDFAA.  This section enumerates several definitions applicable only to the WMDFAA, *see* RCW 46.96.020(1) – (7), and further provides that they are "[i]n addition to the definitions contained in RCW 46.70.011, which are incorporated by reference into this chapter…."  RCW 46.96.020.  Under the WMDFAA, a "new motor vehicle dealer" is defined as:

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

> [A] *motor vehicle dealer* engaged in the business of buying, selling, exchanging, or otherwise dealing in new motor vehicles or new and used motor vehicles at an established place of business, under a franchise, sales and service agreement, or contract with the manufacturer of the new motor vehicles.  However, "new motor vehicle dealer" *does not include* a miscellaneous vehicle dealer as defined in RCW 46.70.011 (17)(c) or a motorcycle dealer as defined in chapter 46.94 RCW.

RCW 46.96.020(10) (emphases added).  Accordingly, to be a "new motor vehicle dealer" protected by the Act, CW would need to be a "motor vehicle dealer."  *Id*.  The WMDFAA defines a "motor vehicle dealer" as "a vehicle dealer that deals in new or used *motor vehicles*, or both." RCW 46.70.011(17)(a) (emphasis added).  The WMDFAA defines "motor vehicle" as:

> [E]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, *and which is required to be registered and titled under this title*.

RCW 46.70.011(9) (emphasis added).

The Act also provides two definitions for "new motor vehicle."  First, RCW 46.70.011(10) defines "new motor vehicle" to be "any motor vehicle that is self-propelled and is required to be registered and titled under [title 46], has not been previously titled to a retail purchaser or lessee, and is not a "used vehicle" as defined under RCW 46.04.660.  Second, RCW 46.96.020(9) defines "new motor vehicle" as "a vehicle that has not been titled by a state and ownership of which may be transferred on a manufacturer's statement of origin (MSO)."  Because "the definitions contained in RCW 46.70.011 ... are incorporated by reference into" RCW 46.96, *see* RCW 46.96.020, both statutory definitions must be given meaning and harmonized.  *State v. Neher*, 112 Wash. 2d 347, 352, 771 P.2d 330 (1989) ("every provision of an act must be harmonized where possible").  When read together, a "new motor vehicle" is a "motor vehicle" that meets both

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

6

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

definitions: (1) a motor vehicle that has not yet been registered and titled and is transferred on an MSO but is still required to be registered and titled; and (2) a motor vehicle that has not yet been registered and titled when it is transferred to the buyer but is required to be registered and titled before use.  In either case, what is being sold is a "motor vehicle," which by definition must be "required to be registered and titled" under the Act.  RCW 46.70.011(9).

Accordingly, for CW to be a "new motor vehicle dealer" under the WMDFAA, the Volvo heavy construction equipment sold pursuant to the Agreement must be "required to be registered and titled" under Title 46[4] of the Revised Washington Code.  As set forth in the Declaration of James Loosen, a DOL employee, none of Volvo's heavy construction equipment are required to be registered and titled under Title 46.  (Loosen Decl., ¶ 3 and Exh. 4, pp. 1-2.)  Each of the Volvo heavy construction equipment models sold by CW under the Agreement were investigated by DOL in response to a Public Record Request submitted by Volvo.  (*Id.* at ¶¶ 2-3 and Exh. 1.)  The DOL concluded that the Volvo construction equipment is "special construction equipment that fall[s] within the Special Highway Construction Equipment definition found in RCW 46.04.551" and "Special Highway Construction Equipment *is not required to be licensed, registered or titled* in Washington...."  (*Id.* at ¶ 3 and Exh. 4, p. 2.)  Thus, as a matter of law, the Agreement does not involve "motor vehicles,"  CW is not a "new motor vehicle dealer," and the WMDFAA is inapplicable.[5]

---

[4] Title 46 is titled "Motor Vehicles" and is administered by the DOL, which is "responsible for administering and recommending the improvement of the motor vehicle laws" within the state relating to a number of items, including "Certificates of title" and "Vehicle registration certificates and license plates."  RCW 46.01.030.

[5] RCW 46.96.030 prohibits the termination, cancellation or failure to renew a "franchise" with a new motor vehicle dealer without good cause.  Franchise is defined as an "agreement ... between a manufacturer and a ***new motor vehicle dealer***, under which the new motor vehicle dealer is *authorized to sell, service, and repair **new motor vehicles***, parts, and accessories under a common name, trade name, trademark, or service mark of the (footnote continued)

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

7

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

### 2.   CW is a "Miscellaneous Vehicle Dealer," Which is Expressly Excluded from the Definition of a "New Motor Vehicle Dealer."

Under the WMDFAA, a "'new motor vehicle dealer' does not include a miscellaneous vehicle dealer as defined in RCW 46.70.011 (17)(c)." RCW 46.96.020(10). A "'miscellaneous vehicle dealer' is a vehicle dealer that deals in motorcycles or **vehicles other than motor vehicles** or mobile homes and travel trailers or any combination of such vehicles." RCW 46.70.011 (17)(c) (emphasis added). Since Volvo construction equipment are not "motor vehicles" under the WMDFAA, *i.e.*, they are not required to be registered and titled, *see* Part I.A.1., *supra,* CW is a "miscellaneous vehicle dealer" and is not covered by the WMDFAA.

The Department's conclusion that the Volvo equipment sold by CW constitutes "Special Highway Construction Equipment," rather than motor vehicles, is consistent with the statutory definition of Special Highway Construction Equipment, which includes:

> any vehicle that is (a) designed and used primarily for the grading of highways, the paving of highways, earth moving, and other construction work on highways, (b) not designed or used primarily to transport persons or property on a public highway, and (c) only incidentally operated or moved over the highway.

RCW 46.04.551(1).

The Volvo construction equipment that is the subject of the Agreement include, articulated haulers, pipelayers, backhoe loaders, asphalt pavers, and excavators, all of which: a) are designed and used for off-road heavy construction; b) are not designed or used primarily for transportation of persons or property on a public highway; and c) are not required to be registered, licensed and

---

manufacturer." RCW 46.96.020(6) (emphases added). For the reasons set forth above, CW is not a "new motor vehicle dealer" and the Agreement does not authorize CW to sell "motor vehicles" – let alone "new motor vehicles." Thus, the Agreement is not a "franchise" for purposes of the WMDFAA.

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

8

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

1    titled under Washington law.  (Gibson Decl., ¶¶ 6-8; Loosen Decl., ¶ 3 and Exh. 4.)[6]  It cannot

2    reasonably be disputed that the Volvo equipment sold by CW are not motor vehicles.  Therefore,

3    CW is a miscellaneous vehicle dealer, not a new motor vehicle dealer, and the WMDFAA does

4    not apply to the Agreement.

5          **B.    Legislative History and Intent Confirm that the WMDFAA Is Intended To
             Apply To Automobiles, Not Volvo's Heavy Construction Equipment.**

6

7          Even if the statutes at issue were ambiguous, legislative history and intent proves that

8    dealers of heavy construction equipment do not fall within the WMDFAA's protections.  The

9    Act's Legislative Findings provide that the WMDFAA is intended to protect automobile dealers

10   and the public from automobile manufacturers.  RCW 46.96.010.  "Automobile" is defined to be a

11   "passenger car"[7] as defined in RCW 46.04.382 registered or principally garaged in this state *other*

12   *than: (a) A farm-type tractor or other self-propelled equipment designed for use principally off*

13   *public roads*...."  RCW 48.22.005(1) (emphasis added).  Additionally, the Final Bill Reports from

14   the 1989 enactment and 2003 amendment of the WMDFAA indicate legislative intent to regulate

15   automobile and "car/truck" franchise relationships.  (Second Declaration of Thomas M. Pyper

16   ("Pyper Decl."), ¶¶ 4, 7 and Exhs. C, F.)  The "Background" section of the 1989 Final Bill Report,

17

18          [6] In addition to the "registered and titled" requirement for lawful travel on Washington roads, RCW
19   46.16A.030(1) provides that "vehicles must be registered as required by this chapter and must display license
     plates or decals assigned by the [DOL]."  RCW 46.16A.030(2) provides that "it is unlawful for a person to
20   operate any vehicle on a [Washington] public highway… without having in full force and effect a current and
     proper vehicle registration and displaying license plates on the vehicle."  Accordingly, the Act governs motor
     vehicles that are required to be licensed, registered and titled.  None of the Volvo heavy construction equipment
21   models sold by CW meet those 3 requirements. (Loosen Decl. ¶ 3 and Exh. 4.)

22          [7] Under Title 46, a "'[p]assenger car' means every *motor vehicle* except motorcycles and motor-driven
23   cycles, designed for carrying ten passengers or less and used for the transportation of persons."  RCW 46.04.382
     (emphasis added).

24
     **Plaintiff's Motion For Summary Judgment**                                    Thomas M. Pyper
25   Case No. 14-cv-00534-JLR                                                          Ann M. Maher
                                                                                    Cynthia L. Buchko
26                                             9                           Whyte Hirschboeck Dudek S.C.
                                                                              33 E. Main Street, Suite 300
27                                                                                     P.O. Box 1379
                                                                                  Madison, WI 53201-1379
                                                                                      (608) 255-4440

begins with the statement "Washington State New *Car/Truck* Franchisees assert that there exists inequities in the contractual relationships with their manufacturers." (*Id.* at Exh. C.)  The "Background" section of the 2003 Final Bill Report begins by stating "*automobile* manufacturers maintain a franchise relationship with their dealers." (*Id.* at Exh. F.)  It continues: "[*a*]*uto* manufacturers' franchise agreements generally require manufacturers to approve any prospective buyer," and summarizes the 2003 amendment's added prohibition of a manufacturer cancelling a franchise "because the dealer owns or attempts to buy another dealership which sells another brand of *automobiles*, or because the dealer sells two or more brands of *automobiles* from the same dealership." (*Id.*)[8]  In sum, the WMDFAA legislative history indicates that automobile dealerships – specifically new car dealerships – were the intended recipients of the Act's protections.  In contrast, there is not a single reference in the legislative history to heavy construction equipment being covered.

In 2011, this Court found that the public interest protected by the Act "can be described as one for certainty amongst *automobile* dealerships and manufacturers with respect to their dealer agreements" and that the Act "governs new *automotive* dealer terminations[.]" *Cont'l Cars,* 2011 WL 2604777, at *7 (emphases added).  Even more recently, the Court of Appeals of Washington

---

[8] All individuals who testified in support or opposition of the WMDFAA's 1989 enactment and 2003 amendment did so on behalf of automobile dealers or manufacturers. The 1989 Senate Bill Report lists several company and association representatives as having testified, including a "G.M. Dealer," a "Chev. Dealer," "Auto Dealers," "G.M.," "PACCAR," "Ford Motor Company," and "Chrysler." (Pyper Decl., ¶ 2 and Exh. A.)  The 1989 House Bill Report lists testifying representatives from the "Washington State Auto Dealers" association, "General Motors," and "Chrysler Corporation." (Pyper Decl., ¶ 3 and Exh. B.)  The 2003 Senate Bill Report indicates testimony was given that "[r]epresentatives of *new car dealers* and *new car manufacturers* have worked for over a year on the issues addressed by the bill and are in agreement about them." (Pyper Decl., ¶ 5 and Exh. D.)  Similarly the 2003 House Bill Report testimony indicates that  "[t]his bill recognizes the differences in bargaining power ... when it comes to negotiating franchise agreements for *new car dealerships*." (Pyper Decl., ¶ 6 and Exh. E.)

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

10

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

1   reviewed the legislative findings in RCW 46.96.010 and concluded that "[t]he express purpose of

2   the Franchise Act is to regulate the relationship between manufacturers and 'their dealers' in order

3   to protect those dealers and benefit the *car-buying* public." *Tacoma Auto Mall, Inc. v. Nissan N.*

4   *Am., Inc.*, 169 Wash. App. 111, 120, 279 P.3d 487, review denied, 175 Wash. 2d 1024, 291 P.3d

5   253 (2012) (citing RCW 46.96.010) (emphasis added).  Tellingly, there is no case law extending

6   the WMDAA to heavy construction equipment.

7       The Volvo construction equipment sold under the Agreement are not automobiles.  They

8   are "vehicles other than motor vehicles" (i.e., not required to be registered and titled), which

9   makes CW a "miscellaneous vehicle dealer" not covered by the Act.  RCW 46.96.020(10) and

10  46.70.011(17)(c).  The Volvo equipment are also "self-propelled equipment designed for use

11  principally off public roads" and are expressly exempted from the definition of "automobile."  *See*

12  RCW 48.22.005(1).  "[L]egislative bodies ... are presumed to have full knowledge of existing

13  statutes affecting the matter upon which they are legislating."  *Martin v. Triol*, 121 Wash. 2d 135,

14  148, 847 P.2d 471 (1993) (internal citation omitted).  The legislature's intent that the WMDFAA

15  apply to "automobiles" is consistent with its requirement that "new motor vehicle dealers" actually

16  deal in "motor vehicles" as defined by statute, which are required to be registered and titled.  Thus,

17  to the extent the Court finds the WMDFAA's statutory language is ambiguous, the intent of the

18  legislature clearly sets forth its desire to regulate automobile dealers, not heavy construction

19  equipment dealers like CW.

20      For the foregoing reasons, Volvo is entitled to judgment as a matter of law on its Claim I.

21

22

23

24  **Plaintiff's Motion For Summary Judgment**

25  Case No. 14-cv-00534-JLR

26                                                11

27

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

## II.     CW CANNOT MEET THE "PUBLIC INTEREST" TEST FOR RELIEF UNDER THE WFIPA.

"By definition, [W]FIPA's requirements and remedies are only implicated when a 'franchise' exists." *Atchley v. Pepperidge Farm, Inc.*, No. CV-04-0452-EFS, 2012 WL 3044169, at *4 (E.D. Wash. July 24, 2012).  If a "franchise" exists as defined under RCW 19.100.010(6), the franchisee gains protections set forth in the WFIPA, including the requirement that "good cause" exist for termination of the franchise.  *See* RCW 19.100.180(2)(j).[9]

The WFIPA "does not specify a remedy for a violation of the bill of rights…." *Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1087 (9th Cir. 2011).  Rather, a violation of the WFIPA constitutes an "unfair or deceptive act or practice" that is actionable only under Washington's Consumer Protection Act ("CPA").  *Id.* at 1087, 1091 ("the CPA provides the remedy for violation of FIPA's bill of rights"); *see also* Douglas C. Berry, *State Regulation of Franchising: The Washington Experience Revisited*, 32 Seattle U. L. Reg. 811, 838 (2008-09)  The WFIPA expressly authorizes suit under the CPA for violations of RCW 19.100.180(2).  *See* RCW 19.100.190(1).

However, a "[v]iolation of the Franchise Act does not automatically establish a violation of the Consumer Protection Act."  *Nelson v. Nat'l Fund Raising Consultants*, Inc., 120 Wash. 2d 382, 393, 842 P.2d 473 (1992).  Instead, "[t]o establish a Consumer Protection Act violation, the following elements must be shown: (1) an unfair or deceptive act or practice [such as a WFIPA violation]; (2) in trade or commerce; (3) which affects the public interest; (4) injuring the plaintiff

---

[9] This is the subsection under which CW asserts it is entitled to WFIPA relief.  (*See* Doc. 23, Counterclaims, ¶ 40.)  For a "franchise" to exist, a dealer must be required to pay a franchise fee.  RCW 19.100.010(6)(a)(iii).  Although Volvo asserts that the Agreement is not a franchise agreement because CW was not required to pay a franchise fee, CW disputes that assertion.  For purposes of the summary judgment motion, however, that dispute is not material.

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

1    in plaintiff's business or property; and (5) causing the injury suffered." *Id.* (citing *Hangman Ridge*

2    *Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784-785, 719 P.2d 531 (1986)).

3    "A Plaintiff must raise an issue of material fact as to each prong of this test, in order to pass

4    summary judgment on a WCPA claim." *Abbouds' McDonald's, LLC v. McDonald's Corp.*, No.

5    CV04-1895P, 2005 WL 2656591, at *5 (W.D. Wash. Oct. 14, 2005) *aff'd*, No. 05-36032, 2006

6    WL 1877247 (9th Cir. 2006).

7       Volvo's termination of the Agreement does not affect the public interest. "The greatest

8    hurdle to any franchisee challenge under the CPA is the requirement that the challenged conduct

9    must affect the public interest." *State Regulation of Franchising: The Washington Experience*

10    *Revisited*, 32 Seattle U. L. Reg. at 875. To that end "[t]he CPA is meant to deal with situations

11    which transcend mere private party contracting disputes and which have affected or will affect

12    consumers generally." *Noyes v. State Farm Gen. Ins. Co.*, No. C08-5032 RBL, 2009 WL 927706,

13    at *8 (W.D. Wash. Apr. 1, 2009) (citing *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86

14    Wash. App. 732, 744–45, 935 P.2d 628, 635 (1997)). "Ordinarily, a breach of a private contract

15    affecting no one but the parties to the contract is not an act or practice affecting the public

16    interest." *Hangman Ridge*, 105 Wash. 2d at 790. "When the transaction is a private dispute, as it

17    is here, and not a consumer transaction, it is more difficult to show public interest in the subject

18    matter. There must be a likelihood additional persons have been or will be injured in the same

19    fashion." *Goodyear Tire,* 86 Wash. App. at 744–45.

20       "Only acts that have the capacity to deceive a *substantial* portion of the public are

21    actionable. *Id*. at 744 (emphasis in original). "Further, under the 'public interest' prong, parties

22    with 'a history of business experience' cannot claim a CPA violation because they are 'not

23    representative of bargainers [who are] subject to exploitation and unable to protect themselves.'"

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

13

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

*Fleetwood v. Stanley Steemer Int'l, Inc.*, 725 F. Supp. 2d 1258, 1276 (E.D. Wash. 2010) *aff'd sub nom. Fleetwood v. Stanley Steemer Int'l*, 446 F. Appx. 868 (9th Cir. 2011) (alteration in original); *see also Abbouds' McDonald's*, 2005 WL 2656591, *6 (franchisee failed to show any members of the public at large were at risk of being similarly injured by the defendant, who did not "solicit[] members of the public at large to become franchisees"); *D&K Foods, Inc. v. Bruegger's Corp.*, Bus. Franchise Guide (CCH) ¶11,506 (D. Md. 1998) (franchisor's alleged misrepresentations not actionable under the CPA because the transactions at issue "were complex, arm's length commercial transactions between highly experienced and sophisticated parties"); *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1235 (9th Cir. 2005)

Additionally, courts have distinguished dealers from average consumers, stating that as businesses, they are not "representative of bargainers vulnerable to exploitation" that the CPA was designed to protect. *Goodyear Tire*, 86 Wash. App. at 745.  To affect the public interest, the conduct must be targeted to the public at large, not a small group of commercial entities. *Id.* at 744 (manufacturer's conduct was not directed at the public; rather, it related only to the dealers with whom it had distributor agreements). *See also Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007); *Segal Co. (E. States), Inc. v. Amazon.Com*, 280 F. Supp. 2d 1229, 1233 (W.D. Wash. 2003).

CW is not entitled to relief under the CPA because any alleged violation of WFIPA does not affect the public interest.  CW is a sophisticated business entity that owns and operates multiple dealerships across three states and touts itself as a "company that for decades has been a market leader in the sale of road building, forestry, and construction equipment." (Doc. No. 23, Counterclaim, p. 22, ¶ 1.)  CW has a 103 year history of business experience, including at least 12 years conducting business with Volvo. (Doc. No. 23 Counterclaim, p. 22-23, ¶¶ 1-2.)  A private

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

14

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

contract dispute between a heavy construction equipment manufacturer and dealer of such scale and vintage is precisely the type of dispute between experienced, sophisticated parties that falls outside the public interest realm of the CPA.

Moreover, Volvo's termination of a commercial dealer contract does not have the capacity to deceive a *substantial* portion of the public.  Volvo does not advertise to, or solicit, the public at large to become heavy construction equipment dealers.  (Gibson Decl., ¶ 12.)  The initial investment required to sell heavy construction equipment is undoubtedly cost prohibitive to the vast majority of the general public.  *See Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1154 (W.D. Wash. 2004) *aff'd in part, rev'd in part sub nom. Swartz v. KPMG LLP,* 476 F.3d 756 (9th Cir. 2007) ("The tribulations of multimillionaires are not the focus of the legislative intent behind the CPA; as a (very small) group, the extremely wealthy are neither unsophisticated nor easily subject to chicanery.")  Indeed, the exclusive, singular nature of CW's Volvo dealership conclusively establishes that the general public is not affected by its termination.  *See Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 523 F. Supp. 56, 59 (E.D. Wash. 1981) ("it would be inappropriate to apply the CPA to protect an exclusive dealership"); *Venetian Stone Works, LLC v. Marmo Meccanica, S.p.A.*, No. C09-1497Z, 2010 WL 5138161, at *2 (W.D. Wash. Dec. 8, 2010).

As a matter of law, CW cannot establish the public interest element required under the CPA.  Therefore, its Counterclaim II for unlawful termination under WFIPA's franchisee bill of rights, RCW 18.100.180(2)(j), must be dismissed, and Volvo is entitled to summary judgment in its favor on its Claim II.

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

15

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

### III.    CW DOES NOT HAVE A CLAIM UNDER THE FDSAMA.

#### A.    The Volvo Heavy Construction Equipment Sold Under the Agreement are Not "Automobiles" And, Therefore, CW Does Not Have Standing To Maintain A FDSMA Claim.

The purpose of the FDSMA or "Automobile Dealers Day in Court Act" is to "permit a franchised automobile dealer to bring suit ... for the failure of the automobile manufacturer to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the dealer's franchise." *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 910 (9th Cir. 1978).  The requisites of a sufficient claim under the Federal Dealers Suits Against Manufacturers Act  are:

> (1) The plaintiff must be an "automobile dealer"; (2) defendant must be an "automobile manufacturer" engaged in commerce; (3) there must have existed a manufacturer-dealer relationship created by written franchise agreement, and (4) plaintiff must have been injured by the defendant's failure "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer.

*Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979).

The FDSAMA only applies to written agreements between an "automobile manufacturer" and an "automobile dealer."  *See* 15 U.S.C. § 1221(a)-(c).  While "automobile" is not defined in the Act, "automobile manufacturer" is defined to mean manufacturers of "passenger cars, trucks, or station wagons."  15 U.S.C. § 1221(a).  Similarly "automobile dealers" is limited to those either selling or distributing "passenger cars, trucks, or station wagons."  15 U.S.C. § 1221(c).  Every federal court that has addressed what constitutes "passenger cars, trucks, or station wagons" has narrowly construed these definitions consistent with "congressional intent to *exclude* manufacturers of arguably similar vehicles."  *River Oaks Motor Homes, Inc. v. Winnebago Indus.,*

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

*Inc.*, 371 F. Supp. 137, 139 (S.D. Tex. 1974) (emphasis in original) (motor homes manufacturer was not an "automobile manufacturer"); *see also Varney v. Coleman Co., Inc.*, 385 F. Supp. 1337, 1346 (D.N.H. 1974) ("legislative history reinforce[s] [snowmobile] exclusion"); *Birmingham Small Arms Co. v. Brooklyn Cycle, Inc.*, 408 F. Supp. 707, 712 (E.D.N.Y. 1976) (excluding motorcycles).  Accordingly, "[j]udicial construction of the Act should be consistent with this narrow congressional intent."  *Birmingham Small Arms*, 408 F. Supp. at 712.

The FDSAMA's "legislative history reflects a congressional decision to limit coverage to the automobile industry," which was the subject of several congressional investigations that prompted enactment of the FDSAMA in 1956.  *River Oaks Motor Homes,* 371 F. Supp. at 140; *see also* H.R. Rep. No. 2850, 84th Cong., 2d Sess. (1956), U.S. Code Congressional and Administrative News (U.S.C.C.A.N.) at 4597.  "The original Senate version of the bill covered manufacturers of 'passenger cars, trucks, stations wagons *and other automotive vehicles....*'  The final [italicized] words were stricken by the House Committee on the Judiciary[.]"  *River Oaks Motor Homes,* 371 F.Supp. at 140 (emphasis in original) (citing 1956 U.S.C.C.A.N. at 4601).  The House Committee explained its rationale for the amendment as follows:

> The amendment, therefore, *excludes transactions involving buses, tractors, motorcycles, and other transportation vehicles propelled by power*.  This accomplishes two purposes: First, it avoids any ambiguity resulting from use of the phrase 'or other automotive vehicles'; second, it *restricts the bill to those areas of automotive distribution in which congressional committees have ascertained a present need for remedial legislation.*

1956 U.S.C.C.A.N. at 4601 (emphases added).  "Congress expressly considered including manufacturers of buses, tractors, motorcycles, and other motor vehicles within the purview of the

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

act." *River Oaks Motor Homes,* 371 F. Supp. at 140.  However, "[t]hese *arguably analogous industries were purposefully excluded from reach of the statute*." *Id.* (emphasis added).

Volvo's heavy construction equipment sold pursuant to the Agreement are not "automobiles," Volvo is not an "automobile manufacturer" and CW is not an "automobile dealer," for purposes of the Act.  *See* 15 U.S.C. § 1221(a)-(c).  Unlike "passenger cars, trucks, and station wagons," the construction equipment Volvo sells to CW is designed for off-road use for construction projects.  (Gibson Decl., ¶ 6; Loosen Decl., ¶ 3 and Exh. 4.)  In fact, Volvo's heavy construction equipment is not compliant with federal highway safety and lighting standards and cannot legally travel on Washington highways.  (Gibson Decl., ¶¶ 6-8; Loosen Decl., ¶ 3 and Exh. 4.)

### B.   Because CW's WMDFAA Claim Must Be Dismissed, So Too Must Its FDSAMA Claim.

The WMDFAA, discussed in Section I, *supra*, is modeled after, and substantially similar, to the FDSAMA, both of which are intended to apply to automobile dealers, not heavy construction equipment dealers such as CW.  Under Washington law, if a WMDFAA claim is dismissed, the dealer is precluded from pursuing a FDSAMA claim:

> If a new motor vehicle dealer recovers a judgment or has a claim dismissed with prejudice against a manufacturer under [the WMDFAA], the new motor vehicle dealer is precluded from pursuing that same claim or recovering judgment for that same claim against the same manufacturer under the federal Automobile Dealer Franchise Act, 15 U.S.C. Sections 1221 through 1225, but only to the extent that the damages recovered by or denied to the new motor vehicle dealer are the same as the damages being sought under the federal Automobile Dealer Franchise Act.

RCW 46.70.190.

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

18

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

In *Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59 (9th Cir. 1973), an automobile dealer sought injunctive relief and damages based on violations of the Federal Act and the Washington Act, 15 U.S.C. sec. 1221 *et. seq* and RCW 46.70.180(7)(b) (now codified as 46.70.180(14)(b)). The district court concluded that the dealer's claim did not satisfy the requirements of the Federal Act. *Id.* at 66. With respect to the state law claims under RCW 46.70.180(7)(b) – now (14)(b) – the court noted that the statute states that "any person whose claim has been dismissed with prejudice under said Federal Automobile Dealer Franchise Act shall have no cause of action for alleged violation" arising under RCW 46.70.180(7)(b). *Id.* at 66-67. The reverse is also true. If a state law WMDFAA claim is dismissed, so too must the FDSAMA claim. RCW 46.70.190.

CW is not an automobile dealer and has no claim under the WMDFAA. Accordingly, Volvo is entitled to summary judgment on its Claim III and CW's Counterclaim II should be dismissed.

## IV. VOLVO'S TERMINATION UNDER SECTION 7.1 OF THE AGREEMENT WAS NOT A BREACH OF WASHINGTON'S IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING.

Termination of the Agreement was done in compliance with the express and unambiguous right granted either party in section 7.1 to terminate without cause upon 180 days' notice, (Gibson Decl., Exh. 1, p. 4.) CW takes the untenable position that "Volvo's invocation of Section 7.1 of the Agreement [no cause termination], rather than Section 22.2 [cause termination], as grounds for termination when Volvo, in fact, claims that Clyde/West's performance is deficient constitutes a breach of the duty of good faith and fair dealing under the Agreement." (Doc. 23, Answer, ¶¶ 14, 15, 43, 47, 48, 49, 50.) CW's argument misconstrues Washington's duty of good faith and fair dealing, which only attaches to a party's obligations under a contract, not to a contractual right.

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

19

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

"Although there is a duty of good faith and fair dealing implied in all existing contracts, [Washington Courts] have consistently held there is no 'free-floating' duty of good faith and fair dealing that is unattached to an existing contract." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177, 94 P.3d 945 (2004).  Rather, "[t]he duty exists only 'in relation to performance of a specific contract term.'" *Id.* (quoting *Badgett v. Security State Bank*, 116 Wash. 2d 563, 570, 807 P.2d 356).  "Thus, a party's obligation is only to perform *the obligations imposed by the contract* in good faith." *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 5373179, at *5 (W.D. Wash. Sept. 24, 2013) (emphasis added).  As this Court has recognized, "[i]f there is no contractual duty, there is nothing that must be performed in good faith." *Schwartz v. World Sav. Bank*, No. C11-0631JLR, 2012 WL 993295, at *4 (W.D. Wash. Mar. 23, 2012); *see also Carlile v. Harbour Homes, Inc.*, 147 Wash. App. 193, 215, 194 P.3d 280 (2008) (duty "requires only that the parties perform in good faith the *obligations* imposed by their agreement") (emphasis added), *Johnson v. Yousoofian,* 84 Wash. App. 755, 762, 930 P.2d 921 (Wash. Ct. App. 1996) ("[i]f there is no contractual duty, there is nothing that must be performed in good faith").

"[T]here cannot be a breach of the duty of good faith when a party *simply stands on its rights* to require performance of a contract according to its terms." *Badgett*, 116 Wash. 2d at 570 (emphasis added).  In *Johnson v. Yousoofian*, the provision at issue was an "unqualified prohibition on assignment without the landlord's consent." *Johnson,* 84 Wash. App. at 759.  The lessees argued that under the implied covenant of good faith, the landlord could not arbitrarily refuse consent, while the landlord argued that the provision imposed no *obligation* to consent, so there was no duty to which the implied covenant of good faith could attach.  *Id.*  The court agreed with the landlord: "[t]he implied duty of good faith is derivative, in that it applies to the

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

20

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

1   performance of specific contractual obligations.  If there is no contractual duty, there is nothing to

2   be performed in good faith." *Id.* at 762 (internal citations omitted).[10]

3          Similarly, the duty of good faith and fair dealing may not be used to contradict

4   unambiguous contractual terms.  In *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, the issue

5   of good faith and fair dealing arose in the context of a tire dealership.  *Goodyeaer Tire,* 86 Wash.

6   App. 732.  The dealer alleged that the manufacturer breached the duty of good faith when it

7   opened company stores near the dealer's store, offered lower prices, acquired many of the dealer's

8   long-term customers, and eventually put the dealer out of business.  *Id.* at 737.  The court found no

9   breach of the duty of good faith because the dealer contract included the following term:

10  "Goodyear retains the right to establish its own outlets for the sale of Goodyear Products or to sell

11  Goodyear Products to other customers in Dealer's trade area or elsewhere." *Id.* at 736.  The court

12  recognized that while "the covenant of good faith applies when the contract gives one party

13  discretionary authority to determine a specific contract term; it does not apply to *contradict*

14  contract terms." *Id.* at 738-39 (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)

15  (emphasis in original);  *see also Myers v. State*, 152 Wash. App. 823, 828, 218 P.3d 241 (2009)

16  ("covenants of good faith and fair dealing do not trump express terms or unambiguous rights in a

17  contract" (internal citation omitted)).

18  _____

19      [10] *See also Wilson v. Bank of America*, No. C13-1567RSL, 2014 WL 841527, at *5 (W.D. Wash. Mar. 4,
    2014) ("allegation is insufficient to state a claim for breach of the duty of good faith and fair dealing as it is not

20  based on a contractual obligation"); *Peoples Bank v. Bluewater Cruising LLC*, No. C12-00939RSL, 2014 WL
    202105, at *15 (W.D. Wash. Jan. 17, 2014) ("these provisions do not impose any obligations on Plaintiff and

21  therefore, Defendants' claim on th[e] basis [of good faith and fair dealing] fails as a matter of law"); *Schwartz v.
    World Sav. Bank*, 2012 WL 993295, at *4 ("If there is no contractual duty, there is nothing that must be

22  performed in good faith"); *McFerrin v. Old Republic Title, Ltd.*, No. C08-5309BHS, 2009 WL 2045212, at *6
    (W.D. Wash. July 9, 2009) ("without the specific obligations, there can be no breach of the implied duty of good

23  faith and fair dealing").

24  **Plaintiff's Motion For Summary Judgment**                                Thomas M. Pyper
                                                                                Ann M. Maher
25  Case No. 14-cv-00534-JLR                                                  Cynthia L. Buchko
                                                                    Whyte Hirschboeck Dudek S.C.
26                                          21                          33 E. Main Street, Suite 300
                                                                                 P.O. Box 1379
27                                                                         Madison, WI 53201-1379
                                                                                (608) 255-4440

The duty of good faith and fair dealing cannot eliminate the contractual right of a party to terminate an at-will agreement without cause.  In *Appling v. State Farm Mut. Auto Ins. Co.*, 340 F.3d 769 (9th Cir. 2003),  a case involving State Farm's termination of several insurance agency agreements, the Ninth Circuit held that a party "cannot graft a good cause requirement onto the Termination Provision using the implied covenant of good faith and fair dealing where [a party] has terminated an at-will relationship according to an express contract provision." *Id*. at 779.  The court reached this conclusion in spite of the allegation that "State Farm commented in employee literature that [it] would not terminate agents except in cases of serious infractions." *Id.* at 777. The court found that such statements "d[id] not indicate that the words 'right to terminate this Agreement by written notice' required good cause." *Id*. at 778;[11]  *see also GMAC v. Everett Chevrolet,* 179 Wash. App. 126, 147, 317 P. 3d 1074 (2014) (GMAC's demand for payment and explanation of the reasons for its demand did not breach the duty of good faith and fair dealing because it had the right to demand payment for "any reason or no reason"); *Pearson v. Farmers Ins. Co. of Washington*, 141 Wash. App. 1011, 2007 WL 3054362.[12]

The duty of good faith and fair dealing does not prevent Volvo's invocation of a non-causal *right* of termination under the Agreement.  Section 7.1  expressly and unambiguously grants both parties the unconditional right to terminate the Agreement "upon one hundred and eighty (180) days advance written notice...."  (Gibson Decl., Exh. 1, p. 4.)  CW alleges that "[b]y choosing to use Section 7.1 of the Washington Agreement ... Volvo abused the discretion granted

---

[11] Although the *Appling Court* was interpreting the California implied covenant of good faith and fair dealing standard, the interpretation of the standard by California courts is the same as the interpretation of the Washington standard by the Washington cases cited in the text.

[12] "[W]e may consider unpublished state decisions, even though such opinions have no precedential value." *Employers Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

1   to it under the contract." (Answer, ¶ 71.)  Nothing in the Agreement, however, imposes an

2   "obligation" on Volvo to choose whether to terminate with or without cause. It has the "right" to

3   invoke either.  Since it had no "duty" to terminate for cause instead of without cause, there is

4   nothing to which the implied covenant of good faith and fair dealing attaches.  *GMAC v. Everett*

5   *Chevrolet, supra.*

6       CW cannot use the duty of good faith and fair dealing to graft a good cause requirement

7   into Volvo's right to terminate the Agreement without cause.  Like the parties in *GMAC*, *Pearson*

8   and *Myers*, Volvo was entitled to effectuate termination in more than one way, under more than

9   one section of a contract. Volvo's statement that it "does not terminate reasonably performing

10  dealers," (Counterclaim ¶ 50), does not act to transform a clear right of non-causal termination

11  into a contract that may only be terminated for cause.  *See GMAC, supra; Appling*, 340 F.3d at

12  777-79.  Section 7.1 "is unambiguous and contains no 'good cause' requirement when either party

13  chooses to terminate the agreement on [180 days'] written notice."  *Pearson*, 141 Wash. App. at

14  *8.  To require Volvo to terminate a non-performing dealer under section 22.2, when it has the

15  right to terminate for no cause upon notice under section 7.1, would impose a "free-floating"

16  obligation not contained within the Agreement, re-write section 7.1 to be available only to

17  terminate well performing dealers (a nonsensical result) and subject Volvo to a contract

18  amendment to which it did not agree.  *Keystone Land & Dev. Co.*, 152 Wash. 2d at 177.  Such a

19  use of the covenant of good faith and fair dealing is precluded under Washington law.

20      As a matter of law, CW cannot maintain its good faith and fair dealing claim.  CW's

21  Counterclaim III should be dismissed, and judgment should be entered in favor of Volvo on its

22  Claim IV.

23

24  **Plaintiff's Motion For Summary Judgment**

25  Case No. 14-cv-00534-JLR

26                                                        23

27

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

**CONCLUSION**

For the foregoing reasons, Volvo's summary judgment motion should be granted.


Dated this 12th day of September, 2014.


WHYTE HIRSCHBOECK DUDEK S.C.          MILLER NASH LLP


*/s/ Thomas M. Pyper*                          */s/ James L. Phillips*
Thomas M. Pyper (admitted pro hac vice)     James L. Phillips, P.C.
Ann M. Maher (admitted pro hac vice)        WSB No. 13186
Cynthia L. Buchko (admitted pro hac vice)   4400 Two Union Square
33 East Main Street, Suite 300              601 Union Street
P. O. Box 1379                              Seattle, Washington 98101
Madison, WI 53701-1379                      Telephone: (206) 622-8484
(608) 255-4440                              james.phillips@millernash.com
tpyper@whdlaw.com
amaher@whdlaw.com                           Attorneys for Plaintiff Volvo Construction
cbuchko@whdlaw.com                          Equipment North America, LLC


Attorneys for Plaintiff Volvo Construction
Equipment North America, LLC

**Plaintiff's Motion For Summary Judgment**
Case No. 14-cv-00534-JLR

24

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440

1

<u>CERTIFICATE OF SERVICE</u>

2

3

I hereby certify that on the 12th day of September, 2014, I caused to be served the

foregoing Plaintiff's Motion for Summary Judgment on the following parties via CM?ECF upon

4

the following parties:

5

6

Joseph S. Goode                          Brian J. Waid
Mark M. Leitner                          Waid Law Office

7

Pia Anderson Dorius Reynard & Moss       5400 California Ave., SW, Suite D
250 E. Wisconsin Ave.                    Seattle, WA  98136

8

Suite 1800                               (206) 388-1926
Milwaukee, WI  53202                     bjwaid@waidlawoffice.com

9

(414) 792-9667

10

jgoode@padrm.com
mleitner@padrm.com

11

12

WHYTE HIRSCHBOECK DUDEK S.C.

13

14

/s/ Thomas M. Pyper

15

Thomas M. Pyper

16

WHD/10637239.2

17

18

19

20

21

22

23

24

**Plaintiff's Motion For Summary Judgment**

25

Case No. 14-cv-00534-JLR

25

26

27

Thomas M. Pyper
Ann M. Maher
Cynthia L. Buchko
Whyte Hirschboeck Dudek S.C.
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, WI 53201-1379
(608) 255-4440
