1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  VOLVO CONSTRUCTION
    EQUIPMENT NORTH AMERICA,
11  LLC,

12              Plaintiff,

13      v.

14  CLYDE/WEST, INC.,

15              Defendant.

CASE NO. C14-0534JLR

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
CONTINUANCE

16              **I.   INTRODUCTION**

17      This matter comes before the court on Defendant Clyde/West, Inc.'s ("Clyde")

18  motion for a continuance of summary judgment briefing pursuant to Rule 56(d).  (Mot.

19  (Dkt. # 45).)  Plaintiff Volvo Construction Equipment of North America, LLC ("Volvo")

20  has moved for summary judgment on its claims for a declaratory judgment that its

21  termination of Clyde as a Volvo dealer does not violate state or federal franchise laws or

22  any covenant of good faith and fair dealing implied by the parties' franchise agreement.

1  (*See generally* Volvo MSJ (Dkt. # 40).)  Clyde responds that it needs more time to

2  complete discovery necessary for it to meaningfully oppose Volvo's motion for summary

3  judgment.  (*See* Mot.)  Having considered the submissions of the parties, the balance of

4  the record, and the relevant law, and having heard oral argument, the court grants in part

5  and denies in part Clyde's motion for a continuance.

6  ## II.   BACKGROUND

7      Clyde has been a dealer of Volvo's heavy construction equipment since 2002.[1]

8  (Gibson Decl. (Dkt. # 41) ¶ 2.)  Clyde's inventory includes equipment such as backhoe

9  loaders, excavators, motor graders, pipe layers, and pavers.  (*See id.* ¶ 7.)  In 2010, the

10  parties entered into a franchise agreement ("Agreement") that appointed Clyde as

11  Volvo's "exclusive authorized dealer" in the state of Washington.  (Agreement (Dkt.

12  # 41-1).)

13      Over the next few years, however, the parties' relationship deteriorated.  (*See*

14  Gibson Decl. ¶ 2-3.)  In October, 2012, Volvo sent Clyde a letter terminating the

15  Agreement.  (Term. Letter (Dkt. # 41-2).)  The parties engaged in a cycle of litigation and

16  administrative proceedings that ultimately proved unsuccessful at resolving the

17  termination dispute.  (*See* Goode Decl. (Dkt. # 46).)

18      In September, 2013, Volvo brought this suit requesting a declaratory judgment

19  that its termination of Clyde's dealership does not violate the Washington Manufacturers'

20  and Dealers' Franchise Agreements Act ("Washington Dealer Act"), RCW 46.96 *et seq.*,

21

22  [1] Clyde continues to operate as a Volvo dealer pending resolution of the parties' dispute.  (*See* Volvo MSJ at 4.)

ORDER- 2

1   the Washington Franchise Investment Protection Act ("FIPA"), RCW 19.100 *et seq.*, the

2   Federal Dealer Suits Against Manufacturers Act ("Federal Dealer Act"), 15 U.S.C.

3   § 1221 *et seq.*, or any covenant of good faith and fair dealing implied by the Agreement.

4   (*See generally* Compl. (Dkt. # 1).)  The parties engaged in a Rule 26(f) discovery

5   conference on June 9, 2014.  (1st Sched. Ord. (Dkt. # 18).)  The parties agreed to

6   exchange initial disclosures on July 15, 2014.  (JSR (Dkt. # 34) at 3.)  Pursuant to the

7   parties' agreed discovery plan, discovery must be completed by June 8, 2015.  (2d Sched.

8   Ord. (Dkt. # 35).)

9         On September 12, 2014, Volvo filed a motion for summary judgment on all of its

10   claims.  (*See* Volvo MSJ.)  At Clyde's request, Volvo agreed to extend Clyde's deadline

11   for a responsive briefing by 3.5 weeks to October  31, 2014.  (Goode Decl. ¶ 12.)  Volvo

12   also agreed to make its Rule 30(b)(6) corporate designee and all of its employees who

13   submitted declarations available for deposition before that time.  (Resp. (Dkt. # 54) at 3.)

14   These depositions have been noticed and are scheduled to occur prior to October 31,

15   2014.  (Goode Decl. Exs. G-1, G-2.)  Nonetheless, Clyde has filed a motion for a

16   continuance of the summary judgment briefing schedule pursuant to Rule 56(d).  (*See*

17   Mot.)  That motion is now before the court.

18                          **III.     ANALYSIS**

19   **A.     Federal Rule of Civil Procedure 56(d) Standard**

20         Under Rule 56(d), if the nonmoving party "shows by affidavit or declaration that,

21   for specified reasons, it cannot present facts essential to justify its opposition, the court

22   may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

1  declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ.

2  P. 56(d). "To prevail under this Rule, parties opposing a motion for summary judgment

3  must make '(a) a timely application which (b) specifically identifies (c) relevant

4  information, (d) where there is some basis for believing that the information sought

5  actually exists.'" *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v.*

6  *Clorox*, 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard*

7  *Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)). Rule 56(d) "provides a device for

8  litigants to avoid summary judgment when they have not had sufficient time to develop

9  affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th

10  Cir. 2002). A Rule 56(d) "continuance of a motion for summary judgment for purposes

11  of discovery should be granted almost as a matter of course unless the non-moving party

12  has not diligently pursued discovery of the evidence." *Burlington N. Santa Fe R.R. Co. v.*

13  *The Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th

14  Cir. 2003) (internal quotation marks and citations omitted); *see also Metabolife Int'l, Inc.*

15  *v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("Although Rule 56(f)[2] facially gives

16  judges the discretion to disallow discovery when the non-moving party cannot yet submit

17  evidence supporting its opposition, the Supreme Court has restated the rule as requiring,

18  rather than merely permitting, discovery 'where the nonmoving party has not had the

19

20      [2] Effective December 1, 2010, Federal Rule of Civil Procedure 56(f) was renumbered 56(d). The
21  Advisory Committee's notes to Rule 56 with regard to the 2010 amendments state that "[s]ubdivision (d)
    carries forward without substantial change the provisions of former subdivision (f)." *See* Fed. R. Civ. P.
22  56 Advisory Comm. Notes.

1    opportunity to discover information that is essential to its opposition.'" (citing *Anderson*

2    *v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)) (footnote added)).

3    **B.**    **Application to Volvo's Claims**

4           The court addresses each of Volvo's claims in turn below.  In short, the court finds

5    that Clyde has met its burden of showing the need for additional discovery with respect to

6    two claims, specifically, the Washington Dealer Act and the FIPA claims. For the

7    remainder of the claims, the summary judgment briefing schedule will remain intact.

8           With respect to the Washington Dealer's Act and FIPA claims, Clyde's request for

9    a continuance lasting until the end of discovery, which is still seven months away, is

10    excessive.  The court concludes that an extension of 90 days is adequate to allow Clyde

11    to gather the information essential to opposing Volvo's claims.[3]

12         **1.**  **Washington Dealer Act**

13           The Washington Dealer Act establishes a statutory framework that governs the

14    conditions under which a manufacturer may terminate a franchise of a "new motor

15    vehicle dealer."  RCW 46.96.030-070; *see Cont'l Cars, Inc. v. Mazda Motor of Am., Inc.*,

16    No. C11-5266BHS, 2011 WL 2604777, at *3 (W.D. Wash. June 30, 2011).  The Act

17    "incorporate[s] by reference" the definitions contained in RCW 46.70.011, which in turn

18    defines a "motor vehicle" as "every vehicle which is self-propelled and . . . which is

19    required to be registered and titled under this title."  RCW 46.96.020; RCW 46.70.011.

20    In its motion for summary judgment, Volvo contends that the Act is inapplicable to Clyde

21

22        [3] Any further continuances of the briefing schedule will be granted only upon a renewed showing that satisfies the requirements of Rule 56(d).

1   because the construction equipment Clyde sells is not required to be registered and titled

2   in the state of Washington, and, as such, Clyde is not a "new motor vehicle dealer."

3   (Volvo MSJ at 6-9.)

4          In support of its contention that the construction equipment Clyde sells is not

5   required to be registered under RCW Title 46, Volvo relies on the Department of

6   Licensing's ("Department") response to Volvo's public records request asking what types

7   of construction equipment the Department requires to be registered.  (*See* Request (Dkt.

8   # 42-1); Letter (Dkt. # 42-4); Guidelines (Dkt. # 42-2).)  In this response, James Loosen,

9   Supervisor of the Vehicle Vessel Disclosure Unit at the Department of Licensing, states:

10  "The Department of Licensing does not require licensing or titling or registration of

11  Special Highway Construction Equipment."  (Letter ¶ 2.)  Volvo contends that the

12  remainder of the Department's response, which includes a Department manual listing

13  examples of special highway construction equipment, confirms that Clyde's inventory

14  falls within the description of "special highway construction equipment."  *See* RCW

15  46.04.551; Volvo MSJ at 7-8.

16         Assuming, without deciding, that Volvo's interpretation of the Washington Dealer

17  Act's scope is correct, Clyde is nonetheless entitled to develop the factual record

18  concerning the issue of whether any of Clyde's inventory is required to be registered.

19  Volvo asserts that this issue can be decided purely as a matter of law.  This assertion,

20  however, is belied by the fact that Volvo itself found it necessary to submit factual

21  declarations and exhibits—rather than relying on a statute or regulation—to support its

22  contention that Volvo's construction equipment is exempt from registration.  (*See*

ORDER- 6

1   Request; Letter; Guidelines.)  At this stage, the facts underpinning the issue remain

2   uncertain, and Clyde deserves the opportunity to test Volvo's evidence and to assert its

3   own affirmative evidence on this issue.

4        Yet because Volvo's motion for summary judgment was filed shortly after formal

5   discovery began, Clyde has not had sufficient time to develop its own affirmative

6   evidence.  *See Kitsap Physicians Serv.*, 314 F.3d at 1000.  Although Volvo claims that

7   Clyde has been purposefully dragging its feet, the court finds that any delays in Clyde's

8   discovery activity fall short of the lack of diligence necessary to forestall granting a

9   continuance "as a matter of course."  *See Burlington N. Santa Fe R.R. Co.*, 323 F.3d at

10  773-74; *see, e.g.*, *Martinez v. Columbia Sportswear USA Corp.*, 553 F. App'x 760, 761

11  (9th Cir. 2014) (finding no diligence when motion was filed nine months into the suit and

12  the  non-moving party, despite being given five-months prior notice, still had not

13  "pursued even basic discovery").  After all, discovery in this case does not close for

14  another seven months, and the record before the court shows that Clyde has participated

15  affirmatively in discovery since it opened.  (*See* 2d Sched. Ord.; Goode Decl. ¶¶ 7-12

16  (describing Clyde's discovery efforts to date, which include serving document requests,

17  interrogatories, and requests for admission on Volvo); Farley Decl. (Dkt. # 61) (same).)

18       In addition, Clyde's motion meets all four of the requirements set forth by the

19  Ninth Circuit.  *See Clorox*, 353 F.3d at 1129.  The motion is timely because it was filed

20  just one week after Volvo's motion for summary judgment and seven months before the

21  close of discovery.  (*See* Mot.; Volvo MSJ; 2d Sched. Ord.)  Additionally, the motion

22  specifically identifies both the relevant information that Clyde intends to seek and the

ORDER- 7

1  bases for believing the information exists.  (*See* Mot.).  To wit, Clyde intends to depose

2  Mr. Loosen, depose the Department's agency designee, and obtain records and

3  documents from the Department regarding current and historic licensing practices,

4  particularly as they are applied to "special highway construction equipment."  (Goode

5  Decl. ¶¶ 14, 21.)  Clyde believes additional information in this category exists because

6  the Department's partial response to Clyde's own public records request shows that

7  heavy construction equipment (such as motor graders and wheeled excavators) has in fact

8  been registered to operate on Washington roadways during the period from 2002 to 2015.

9  (McConnell Decl. (Dkt. # 46-9) ¶¶ 24-27 and Exs. D-F-1.)

10         The Supreme Court has made clear that Rule 56(d) requires, rather than merely

11  permits, discovery where the nonmoving party has not had the opportunity to discover

12  information that is essential to its opposition.  *Metabolife Int'l, Inc.*, 264 F.3d at 846.

13  Accordingly, Clyde is entitled to an extension of 90 days to conduct discovery into this

14  claim.

15  **2.  FIPA**

16         FIPA establishes certain protections for franchisees, including, as relevant here,

17  the requirement that a franchise can only be terminated for "good cause."  *See* RCW

18  19.100.180.  FIPA does not, however, establish a remedy for violations of these

19  protections.  *Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1091 (9th

20  Cir. 2011).  Rather, a violation constitutes a per se "unfair or deceptive act or practice"

21  that is actionable under the Washington Consumer Protection Act ("CPA"), RCW 19.86

22  *et seq. Red Lion Hotels*, 663 F.3d at 1091; *Nelson v. Nat'l Fund Raising Consultants,*

ORDER- 8

1   *Inc.*, 842 P.2d 473, 478 (Wash. 1992); RCW 19.100.190(1).  A violation of FIPA alone,

2   however, does not automatically establish a violation of the CPA.  *Nelson*, 842 P.2d at

3   478.  To a establish a CPA claim, a plaintiff must show:  (1) an unfair or deceptive trade

4   practice (such as a violation of FIPA); (2) that occurs in trade or commerce; (3) an impact

5   on the public interest; (4) injury to the plaintiff in his or her business or property; and (5)

6   a causal link between the unfair or deceptive act and the injury suffered.  *Hangman Ridge*

7   *Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986).

8           Volvo argues that Clyde is unable to show an impact on the public interest as a

9   matter of law because "breach of a private contract affecting no one but the parties to the

10  contract is not an act or practice affecting the public interest."  (Volvo MSJ at 14 (quoting

11  *Hangman Ridge*, 719 P.2d at 538).)  There is, however, no bright line rule that private

12  contract disputes cannot give rise to CPA claims.  *See Hangman Ridge*, 719 P.2d at 538

13  (identifying factors relevant to evaluating the public interest in the context of private

14  contract disputes).  More importantly, "whether the public has an interest in any given

15  action is to be determined by the trier of fact from several factors, depending upon the

16  context in which the alleged acts were committed."  *Id.* at 537-38; *see also Stephens v.*

17  *Omni Ins. Co.*, 159 P.3d 10, 24 (2007) *aff'd sub nom. Panag v. Farmers Ins. Co. of*

18  *Washington*, 204 P.3d 885 (2009) ("Whether the public has an interest is therefore an

19  issue to be determined by the trier of fact."); *Cotton v. Kronenberg*, 44 P.3d 878, 886

20  (2002).

21          Because the public interest element is a question of fact, Clyde is entitled to an

22  opportunity to discover evidence that will support a finding in its favor.  As discussed

1  above, Clyde's opportunity to develop a factual record has been brief.  Additionally,

2  Clyde's motion for relief is timely, and Clyde has been diligent enough in pursuing

3  discovery to merit relief.  Finally, Clyde identifies both the relevant information that

4  Clyde intends to seek and the bases for believing the information exists.  *See Clorox*, 353

5  F.3d at 1129.  Specifically, Clyde submits that it will seek discovery from the Department

6  of Licensing and the municipalities who purchase Volvo construction equipment in order

7  to establish how the public's interest in maintaining and building safe roads and

8  infrastructure relates to franchise disputes between dealers and manufacturers of such

9  equipment.  (Mot. at 10-11; Goode Decl. Ex. K at 7-8.)  Because Clyde has satisfied all

10  four of the Ninth Circuit's requirements for Rule 56(d) motions, Clyde is entitled to an

11  extension of 90 days to conduct discovery into this claim.  *See Clorox*, 353 F.3d at 1129.

12  **3.  Federal Dealer Act**

13  The Federal Dealer Act authorizes an "automobile dealer" to bring suit against an

14  "automobile manufacturer" who, among other things, fails to act in good faith when

15  terminating a franchise.  15 U.S.C. § 1222; *see also Sherman v. British Leyland Motors,*

16  *Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979).  The Act defines an "automobile dealer" as a

17  person or business entity "engaged in the sale or distribution of passenger cars, trucks, or

18  station wagons."  *Id.* § 1221(c).  Volvo argues that federal courts have consistently

19  construed this definition to "exclude . . . arguably similar vehicles," such as mobile

20  homes, snowmobiles, and motorcycles.  (Volvo MSJ at 17); *see also Birmingham Small*

21  *Arms Co. v. Brooklyn Cycle, Inc.*, 408 F. Supp. 707, 713 (E.D.N.Y. 1976) (motorcycles);

22  *River Oaks Motor Homes, Inc. v. Winnebago Indus., Inc.*, 371 F. Supp. 137, 140 (S.D.

1    Tex. 1974) (mobile homes); *Varney v. Coleman Co.*, 385 F. Supp. 1337, 1346 (D.N.H.

2    1974) (snowmobiles).  Interpretation of a statutory definition is a question of law for the

3    court to decide.  *See Forest Guardians v. Dombeck*, 131 F.3d 1309, 1311 (9th Cir. 1997)

4    ("The interpretation of a statute is a question of law.")  As such, Clyde's requested

5    discovery is irrelevant to resolving the issue.

6         Clyde nonetheless asserts that there is a dispute of fact because it intends to argue

7    that the construction vehicles at issue qualify as "trucks" under the Act.  (Mot. at 11.)

8    Clyde does not specify what it believes the salient characteristics of a "truck" to be.  At

9    any rate, to the extent there is a dispute over whether Volvo's construction equipment

10   meets this unspecified definition, Clyde fails to show that it "cannot present facts

11   essential to justify" its position.  *See* Fed. R. Civ. P. 56(d).

12        Specifically, Clyde claims that it needs discovery from Volvo as to "what features

13   these vehicles have that classify them as trucks, and the features of the Volvo equipment

14   sold by Clyde that allow it to be driven on roads."  (Mot. at 11.)  But Clyde has been in

15   the business of selling Volvo construction equipment for over 12 years.  (McConnell

16   Decl. ¶ 5.)  Clyde puts forth no explanation as to why it is not aware of, or cannot

17   discover, those features itself.  (*See, e.g.*, *id.* ¶¶ 26-28 (declaration by the President of

18   Clyde explaining the ways in which Volvo construction equipment is designed to be

19   operated on roadways), Ex. I  (Volvo manual listing equipment options that purportedly

20   permit wheeled excavators to be used on roads); Exs. J-L (Volvo price lists and

21   newsletters describing characteristics of construction equipment).)  Clyde's asserted lack

22   of evidence is especially unconvincing  in light of the fact that Clyde has already been

granted a 3.5 week extension to file its responsive brief, and is scheduled to depose all of

Volvo's declarants and Volvo's corporate designee before that deadline.  (Goode Decl.

¶ 12.)  Although additional information from Volvo might be useful in opposing Volvo's

motion, Clyde has failed to show that such information is "essential" to doing so.  *See*

*Metabolife Int'l*, 264 F.3d at 846.  Therefore, the court denies Clyde's request for a

continuance with respect to Volvo's motion for summary judgment on the Federal Dealer

Act claim.

### 4.  Duty of good faith

The final point of contention between the parties arises from the fact that Volvo

terminated the Agreement pursuant to Section 7.1, which provides that "the Agreement

may be terminated by either party . . . upon one hundred and eighty (180) days advance

written notice."  (Agreement ¶ 7.1.)  Although Volvo's termination letter did not state a

reason for the termination, Clyde maintains that Volvo terminated the Agreement based

on a perceived lack of market performance.  (*See* Mot. at 11-14.)  Clyde argues that

termination under Section 7.1 was a breach of Volvo's duty of good faith and fair dealing

because Section 22.2 in the Agreement provides Clyde with 180 days to cure any

identified failure to achieve or maintain the requisite market shares.  (*See* Agreement

¶ 22.2.)

In its motion for summary judgment, Volvo argues that it owed no duty of good

faith to Clyde with respect to Volvo's choice to terminate the franchise under Section 7.1

of the Agreement.  (Volvo MSJ at 20-22.)  Specifically, Volvo asserts that Washington

courts "have consistently held there is no 'free-floating' duty of good faith and fair

1    dealing." (*Id.* at 20 (quoting *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949

2    (Wash. 2004).)  Rather, "the duty exists only in relation to performance of a specific

3    contract term." (*Id.* (quoting *Keystone Land & Dev. Co.*, 94 P.3d at 949).)  Volvo relies

4    on this and other authority to conclude that "a party's obligation is only to perform the

5    obligations imposed by the contract in good faith." (*Id.* (quoting *Microsoft Corp. v.*

6    *Motorola, Inc.*, No. C10-1823JLR, 2013 WL 5373179, at *5 (W.D. Wash. Sept. 24,

7    2013) (citing *Barrett v. Weyerhauser Co. Severance Pay Plan*, 700 P.2d 338, 342 n.6

8    (Wash. Ct. App. 1985)).)  Volvo concludes, "there cannot be a breach of duty of good

9    faith when a party simply stands on its rights to require performance of a contract."

10   *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (1991).

11          Clyde devotes the majority of its response to delineating the discovery it contends

12   is necessary for it to be able to show that Volvo breached its duty of good faith. (*See*

13   Mot. at 13 ("These facts all inform a determination of whether Volvo's conduct violated

14   the duty of good faith.")  However, as the preceding paragraph shows, Volvo's motion is

15   directed to a narrower inquiry.  Volvo's motion does not address whether its actions

16   violated a duty of good faith, but rather whether a duty of good faith existed in the first

17   place. (*See* Resp. (Dkt. # 54) at 12-13.)  As such, Clyde's requested discovery regarding

18   the history, reasons, and subjective intent behind this and other franchise terminations by

19   Volvo is irrelevant to the instant motion for summary judgment. (*See* Mot. at 12-14.)

20          In its reply brief, Clyde attempts to reframe its argument.  Clyde clarifies that it

21   intends to argue that *if* Clyde's alleged lack of market performance motivated Volvo to

22   terminate the contract, then Volvo had a duty to do so under Section 22.2 rather than

ORDER- 13

1   Section 7.1.  (Reply (Dkt. # 60) at 5.)  Clyde reiterates that this position entitles it to

2   discovery into Volvo's intentions in this particular case, as well as Volvo's treatment of

3   other similarly situated franchises.  (*Id.*)

4          However, it is not necessary to determine whether Volvo in fact terminated Clyde

5   for lack of market performance in order to answer the question of whether such a

6   termination implicates the duty of good faith.  Clyde has already identified specific facts

7   supporting its contention that it was terminated for underperformance.[4]  Crediting this

8   evidence, the factual dispute regarding Volvo's motivation for terminating Clyde is not

9   susceptible to resolution on a motion for summary judgment.  *See Celotex Corp. v.*

10  *Catrett*, 477 U.S. 317, 324 (1986).  Nevertheless, even assuming Clyde was terminated

11  for underperformance, the question of whether a duty of good faith exists with respect to

12  termination in that context remains a question of law that can be decided by the court.

13  *See Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (1991) (deciding whether a duty of

14  good faith existed as a matter of law).  Clyde has not shown it lacks access to facts

15  essential to oppose the specific points of law that Volvo raises in its motion for summary

16  judgment.  Therefore, the court denies Clyde's request for a continuance with respect to

17  the duty of good faith claim.  *See Metabolife Int'l*, 264 F.3d at 846.

18

19  _____

20      [4] For example, Volvo's sworn interrogatory response states that "Clyde/West was an
    underperforming dealer, which led to the decision to terminate Clyde/West."  (Volvo Interrog. Resp.
21  (Dkt. # 46-12) at 14.)  And a letter from Volvo's general counsel to Clyde stated that, "Volvo does not
    terminate reasonably performing dealers . . . Clyde/West has simply been an underperforming dealer for
    years compared to Volvo dealers in similar market territories, which left Volvo no choice but to replace
22  Clyde/West in the Washington territory."  (*Id.* at 15 (quoting Volvo letter).)

ORDER- 14

1

IV.    CONCLUSION

2          For the foregoing reasons, the court GRANTS in part and DENIES in part Clyde's

3   motion for a continuance (Dkt. # 45).  The existing summary judgment briefing schedule

4   remains intact with respect to Volvo's claims regarding the Federal Dealer Suits Against

5   Manufacturers Act and the implied covenant of good faith.  With respect to Volvo's

6   claims under the Washington Manufacturers' and Dealers' Franchise Agreements Act

7   and the Washington Franchise Investment Protection Act, the court strikes the

8   corresponding portions of Volvo's motion for summary judgment pursuant to Federal

9   Rule of Civil Procedure 56(d) without prejudice to re-filing on or after January 22, 2015.

10          Dated this 20th day of October, 2014.

11

12

13   _____

    JAMES L. ROBART
14   United States District Judge

15

16

17

18

19

20

21

22

ORDER- 15